# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| SHARON ENGLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-05088-CV-SW-SWH |
| | ) |
| LAND O'LAKES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

### I. BACKGROUND

Plaintiff, as personal representative of the Estate of Terry Allen Engle, originally filed her declaratory judgment action in state court requesting that the court declare "that any and all benefits under the policy or plan administered by Land O'Lakes, Inc. be payable to the Estate of Terry Allen Engle, deceased, so that said monies will accrue to the benefits of the sole and only heirs of the Estate, the surviving children of the Decedent." (Doc. #1-1, at 4) Defendants Land O'Lakes, Inc. and Unum Life Insurance Company of America removed the matter to federal court, in part, on the grounds that the matter is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), and that the cause of action should thus be treated as being brought under ERISA. (Doc. #1, at 2) On April 15, 2017, Defendants filed a motion for summary judgment. (Doc. #22, at 12-15) After argument on the motion, this Court denied the motion for summary judgment and remanded the matter to Unum, the Plan Administrator, for the development of an adequate record in accordance with the Court's Order. (Doc. #28)

On remand, the Plan Administrator, issued a determination that found no evidence to support plaintiff's assertion that "someone other than Jaclyn Jones is entitled to the policy proceeds." (Doc. #35-1, at 18) Unum upheld that determination on appeal. (Doc. #35-1, at 64)

Now before this Court are defendants' motion for summary judgment (doc. #34) and plaintiff's motion for summary judgment (doc. #37).

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. "Material facts" are those "that might affect the outcome of the suit under the governing law," and a "genuine" material fact involves evidence "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

The initial burden of proof on a motion for summary judgment is placed on the moving party to establish the absence of any genuine issue of material fact. See Olson v. Pennzoil Co., 943 F.2d 881, 883 (8th Cir.1991). If the moving party meets its initial burden, the nonmoving party must then produce specific evidence to demonstrate genuine issues for trial. Id. When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but must set forth, via citation to material in the record, specific facts showing that a genuine issue of material fact exists. See Fed.R.Civ.P. 56(c)(1); Stone Motor Co. v. General Motors Corp., 293 F.3d 456, 465 (8th Cir.

2002). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). The Court may not weigh the evidence in the record, decide credibility questions or determine the truth of factual issues, but merely decides if there is evidence creating a genuine issue for trial. See Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999) abrogated on other grounds Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011).

### III. UNDISPUTED FACTS

The following facts are uncontroverted unless otherwise noted:

1. Terry Engle ("decedent") was hired by defendant Land O'Lakes, Inc. ("Land O'Lakes") as a full time employee on November 4, 2012. (Doc. 1-1, at ¶1) [Defendants' Statement of Uncontroverted Material Facts (hereafter "DSUMF") #1]

2. Defendant Unum Life Insurance Company of America ("Unum") issued a group insurance policy to Land O'Lakes bearing policy number 99345 003 (hereafter "the Policy") to fund a welfare benefit plan (hereafter "the Plan") providing, among other things, life and accidental death and dismemberment insurance benefits to qualifying employees of Land O'Lakes. (Doc. #22-1[1], at 43-121); Doc. #1-1, at ¶6) [DSUMF #2]

3. The Effective Date of the Policy was January 1, 2013. (Doc. #22-1, at 43, 45, 52) [DSUMF #3]

---

[1] In their original motion for summary judgment, defendants attached Unum's Claim Folder Contents. (See Doc. #22-1) Plaintiff also attached Unum's Claim Folder Contents to Plaintiff Sharon Engle's Suggestions in Opposition to Defendants' Motion for Summary Judgment. (See doc. #23-1) The two exhibits (doc. #22-1 and doc. #23-1) are exact copies. For purposes of this Order the Court will refer only to doc. #22-1.

4. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Doc. 1; Doc. #22-1, at 110-17) [DSUMF #4]

5. Land O'Lakes is the designated Plan Administrator and named fiduciary of the Plan. (Doc. #22-1, at 110) [DSUMF #5]

6. Land O'Lakes, as the Plan Administrator, delegated "to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan." (Doc. #22-1, at 117)

7. The Policy further grants Unum discretionary authority to interpret the Plan:

> The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contract, letters or other documentation or procedures to other affiliates, persons or entities. Benefits determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provision of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

(Doc. #22-1, at 117) [DSUMF #6]

8. The General Provisions section of the Policy contains two headings; one entitled "**WHAT DEPENDENTS ARE ELIGIBLE FOR LIFE COVERAGE**" and the other entitled "**WHAT DEPENDENTS ARE ELIGIBLE FOR ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE**". Under both headings, the following language appears:

> . . .
> The following dependents are eligible for coverage under the plan:
>
> -   Your lawful spouse, including a legally separated spouse. You may not cover your spouse as a dependent if your spouse is enrolled for coverage as an employee.
>
> "Spouse" wherever used includes domestic partner.
>
> -   Your domestic partner. Your domestic partner is the person named in your declaration of domestic partnership. You must execute and provide the plan administrator with such a declaration which states and gives proof that the domestic

partner has had the same permanent residence as you for a minimum of 6 consecutive months prior to the date insurance would become effective for that domestic partner. You must not have signed a declaration of domestic partnership with anyone else within the last 6 months of signing the latest declaration of domestic partnership. Also, the domestic partner must be at least 18 years of age, competent to contract, not related by blood closer than would bar marriage, the sole named domestic partner, not married to anyone else and the declaration of domestic partnership must be approved and recorded by the plan administrator. You may not cover your domestic partner as a dependent if your domestic partner is enrolled for coverage as an employee.

(Doc. #22-1, at 75, 76) [DSUMF #7] (modified)

9. Regarding beneficiaries, the Claim Information sections of the Policy for both Life Insurance and Accidental Death and Dismemberment Insurance state:

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.

Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:

- spouse;
- child or children;
- mother or father; or
- sisters or brothers.

(Doc. #22-1, at 58-59, 62) [DSUMF #8] (modified)

10. Terry Engle died on April 8, 2014, in an automobile accident. (Doc. #1-1, at ¶2; Doc. #22-1, at 173, 186) [DSUMF #9]

11. Plaintiff Sharon Engle (Terry Engle's mother) is the personal representative of Terry Engle's estate. (Doc. #1-1, at ¶1; Doc. #22-1, at 179, 181; Doc #35-1, at 38) [DSUMF #10]

12. Jaclyn Jones and Ms. Engle were appointed guardians of Mr. Engle's children. (Doc. #35-1, at 36, 38, 67) [DSUMF #11]

13. Terry Engle is survived by two children, Tori and Aiden. (Doc. #1-1, at ¶3) [DSUMF #12]

14. Tori and Aiden are the only heirs of Terry Engle's estate. (Doc. #1-1, at ¶3) [DSUMF #13]

15. Tori and Aiden were both listed on decedent's insurance coverage. (Doc. #22-1, at 28) [Plaintiff's Additional Statement of Uncontroverted Material Facts (hereafter "PSUMF #49)] (modified)

16. Terry Engle had divorced the mother of Tori and Aiden, Melissa Engle, on November 20, 2012, and, at the time of his death, he was not married. (Doc. #1-1, at ¶4) [DSUMF #14]

17. Unum made multiple inquiries to Land O'Lakes about a beneficiary designation. (Doc. #35-1, at 311-16, 366) [DSUMF #15]

18. Neither Land O'Lakes, nor Unum, were able to locate a beneficiary designation form completed by Terry Engle. (Doc. #1-1, at ¶9; Doc. #22-1, Doc. #22-1, at 19, 143, 151; Doc. #35-1, at 311-316, 366) [DSUMF #16] (modified)

19. Unum contacted plaintiff, the mother of the deceased, by letter on both April 9, 2014, and on April 11, 2014, requesting beneficiary determination information. (Doc. #22-1, at 151, 159) [PSUMF #51)

20. On April 11, 2014, Unum wrote to Sharon Engle asking for information to support the claim for life insurance benefits. (Doc. #22-1, at 159-64) [DSUMF #19]

21. On April 18, 2014, Sharon Engle submitted a Facility of Payment Affidavit, which included information that Jaclyn Jones was the domestic partner of Mr. Engle. (Doc. #22-1, at 178-81) [DSUMF #20] (modified)

22. On the first page of the Affidavit, at the top, the Affidavit states that, "The information provided on this form will help us to identify the correct beneficiary(ies) for Terry Engle." (Doc. #22-1, at 178) [DSUMF #21]

23. On the last page of the Affidavit, right above her notarized signature, Sharon Engle swore that, "The above statements are true and complete to the best of my knowledge and belief. . . . I understand that if the claim is payable, benefits will be paid according to the beneficiary provision in the policy based on the information I have provided on this form." (Doc. #22-1, at 181) [DSUMF #22]

24. On April 29, 2014, Unum wrote to Jaclyn Jones and included a "Domestic Partner Affidavit" for her to complete. (Doc. #22-1, at 193-96) [DSUMF #23]

25. Jaclyn Jones signed the Domestic Partner Affidavit on May 5, 2014. (Doc. #22-1, at 203) [DSUMF #24] (modified)

26. In the Domestic Partner Affidavit, Jaclyn Jones swore as follows:

I, Jaclyn Jones, certify that Terry Engle was my domestic partner, from the time this insurance became effective until the date of his death. In addition, I certify that Terry Engle and I:
- Were each other's sole domestic partners;
- Shared a close personal relationship with each other and the same permanent residence;
- Were jointly responsible for our common welfare and financial obligations;
- Were not married to or separated from anyone else;
- Were not related to one another by blood to a degree which would legally prohibit marriage in the state of our residence;
- Had not signed a Domestic Partner Statement as partner of anyone else after the date of our Domestic Partner Statement (if required in our state of residence).

(Doc. #22-1, at 203) [DSUMF #25]

27. On April 29, 2014, Sharon Engle contacted Unum by phone. During the conversation, she inquired about the status of benefits. Unum advised that it was waiting on the Domestic Partner Affidavit from Jaclyn Jones, but it appeared Jones would be the beneficiary. Sharon Engle asked

if that was like "common law," and Unum advised that it was similar. According to Unum, Sharon Engle responded "good," and that Terry Engle and Jaclyn Jones "lived together and were to be married." (Doc. #22-1, at 199) [DSUMF #26] (modified)

28. On May 7, 2014, Unum determined that the life insurance benefit was due and payable to Jaclyn Jones, and it paid her the $133,000 benefit amount. (Doc. #22-1, at 223-25) [DSUMF #27]

29. Unum continued to investigate the claim as it related to the accidental death benefit, ultimately approving the claim and paying Jaclyn Jones $133,000 on June 9, 2014. (Doc. #22-1, at 267-68) [DSUMF #28] (modified)

30. On September 10, 2014, Sharon Engle contacted Unum to express her disagreement with the decision to pay benefits to Jaclyn Jones, rather than to Terry Engle's estate and/or his children. (Doc. #22-1, at 275) [DSUMF #29] (modified)

31. On August 12, 2015, plaintiff filed a Petition for Declaratory Judgment in the Circuit Court of McDonald County, Missouri, which was later removed to this Court. (Doc. ##1, 1-1)

32. On March 10, 2017, this Court denied defendants' motion for summary judgment and remanded to the Plan Administrator for the development of an adequate record in accordance with the decision of the Court. (Doc. #28)

33. Following the Court's remand, and pursuant to an April 7, 2017 letter, Unum upheld its earlier decision to pay benefits to Ms. Jones. (Doc. #35-1, at 18-21) [DSUMF #30]

34. Unum's letter recounts additional attempts to locate decedent's designation of beneficiaries and recites the same facts as stated in the Statement of Facts 19-21, 24-25, and 27-28, <u>supra</u>. (Doc. #35-1, at 18-21) [DSUMF #31] (modified)

35. Ultimately, Unum determined that the Plan included "domestic partner" as a "surviving family member" in the beneficiary designation provision of the Plan. (Doc. #35-1, at 19-20) [DSUMF #35]

36. Unum stated that the "Domestic Partner Affidavit is the standard form that Unum uses to verify the status of a claimed domestic partner when it considers payment of benefits to a domestic partner." (Doc. #35-1, at 20) [DSUMF #36] (modified)

37. Plaintiff appealed Unum's decision in a letter dated June 15, 2017. (Doc. #35-1, at 24-27) [DSUMF #37] (modified)

38. Plaintiff argued that Unum's decision was unreasonable for two reasons: 1) the sections entitled "Claim Information" do not allow for the payment of life insurance claims and accidental death and dismemberment claims to a domestic partner, and, in the alternative, 2) if Unum's reading of the policy applying the General Provisions to the payment of claims is correct, the language of the policy would not allow for the payment of the claims to Ms. Jones where the decedent had not filed a declaration of a domestic partnership. (Doc. #35-1, at 24-25)

39. Unum affirmed its earlier decision in a June 26, 2017 letter. (Doc. #35-1, at 64-70) [DSUMF #38]

40. In affirming the decision, Unum noted that they have "discretionary authority to make benefit determinations including determining eligibility for benefit and the amount of benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. The benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of the claim." (Doc. #35-1, at 68-69)

41. In response to plaintiff's argument on appeal that the claims language of the policy does not contain any provision allowing for payment to a domestic partner, Unum stated that the

"domestic partner definition and requirements you reference in the policy pertain only to a dependent's eligibility [for] group Life insurance coverage. The definition and requirements do not pertain to the payment of proceeds." (Doc. #35-1, at 69)

IV. CONCLUSIONS OF LAW

The Plan at issue is subject to the requirements of the Employee Retirement Income Security Act of 1974 (hereafter "ERISA"), 29 U.S.C. § 1001 et seq. Where, as here, the plan gives discretionary authority to the plan administrator "to determine eligibility for benefits or to construe the terms of the plan[,]" the court reviews the administrator's decision for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956–57, 103 L. Ed. 2d 80 (1989). This highly deferential standard means that an administrator's determination will be upheld as long as it is reasonable. Maune v. Int'l Bhd. of Elec. Workers, Local No. 1, Health & Welfare Fund, 83 F.3d 959, 963 (8th Cir. 1996).

In deciding whether the administrator's determination is reasonable, courts look to a number of factors commonly referred to as the "Finley Factors". King v. Hartford Life & Acc. Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005). Those factors are:

1) whether the administrator's interpretation "is consistent with the goals of the Plan",
2) whether the administrator's "interpretation renders any language in the Plan meaningless or internally inconsistent",
3) whether the administrator's "interpretation conflicts with the substantive or procedural requirements of the ERISA statute",
4) whether the administrator has "interpreted the words at issue consistently", and
5) whether the administrator's "interpretation is contrary to the clear language of the Plan."

Finley v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992).

The touchstone, nonetheless, is reasonableness. Therefore, if an administrator's decision "offers a reasonable explanation, their decision should not be disturbed even if another reasonable, but different, interpretation may be made." Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir.

1996) (internal quotations omitted), abrogated on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

In the instant matter, Unum, the Plan Administrator, determined that the proceeds should be paid to Ms. Jones. Unum based its determination on two provisions found in the Plan. (Doc. #35-1, at 19-20) The first provision is the language of the Plan that states "'Spouse' wherever used includes domestic partner" (hereafter referred to as "the spousal enlargement language"). (Undisputed Fact (hereafter "UF") #8, supra; Doc. #22-1, at 75) The second provision, the facilities of payment provision[2], dictates who shall receive payment of benefits where no beneficiary is named. The facility of payment provision states in relevant part:

> If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is disqualified, your death benefit will be paid to your estate.
>
> Instead of making a death payment to your estate, Unum has the right to make payment to the first surviving family members of the family members in the order listed below:
>
> - spouse;
> - child or children;
> - mother or father; or
> - sisters or brothers.

(UF #9, supra; Doc. #22-1, at 58-59) Unum found that taken together, the spousal enlargement language and the facilities of payment provisions allowed for the payment of benefits to a domestic partner, in this case Ms. Jones. (Doc. #35-1, at 19, 68) Unum noted that information provided by plaintiff indicated that Ms. Jones was the domestic partner of the decedent and that Ms. Jones submitted a Domestic Partner Affidavit. (Doc. #35-1, at 19-20, 68-69) Therefore, Unum contends

---

[2] Unum refers to this provision as the facility of payment provision and the form to assist in determining payment is entitled the Facility of Payment Affidavit. (See Doc. 35-1, at 20; Doc. # 22-1, at 162) This Court will therefore refer to the provision as the facility of payment provision.

11

that it had the discretion to award benefits to a domestic partner and that its determination was reasonable.

Plaintiff, on the other hand, argues that the spousal enlargement language does not apply to the payment of proceeds to a beneficiary. (Doc. #38, at 14-17) Essentially, plaintiff argues that the domestic partner language applies only to individuals who are eligible for life coverage as a dependent of the employee. In the alternative, plaintiff argues that if the spousal enlargement language includes payment to beneficiaries, Ms. Jones was still not entitled to the proceeds because she did not meet the requirements to be considered a domestic partner. (Doc. #38, at 17-18)

This Court has carefully scrutinized the Plan as well as the Administrator's reasoning for awarding benefits. Various interpretations of the Plan have been advanced. After reviewing all interpretations of the Plan, the Court concludes that Unum's interpretation is contrary to the clear language of the Plan.

Unum's interpretation of the Plan would have this Court focus on one line in the General Provisions section of the Plan and disregard language immediately preceding and following that line. The General Provisions section of the Plan consists of a number of headings. Two of the headings are entitled "What Dependents are Eligible for Life Coverage" and "What Dependents are Eligible for Accidental Death and Dismemberment Coverage". (UF #8, supra; Doc. #22-1, at 75, 76) Under each of these headings, the relevant language, including the spousal enlargement language, is identical. That language found under the two headings is as follows:

- Your lawful spouse, including a legally separated spouse. You may not cover your spouse as a dependent if your spouse is enrolled for coverage as an employee. **"Spouse" wherever used includes domestic partner.**

- Your domestic partner. Your domestic partner is the person named in **your declaration of domestic partnership. You must execute and provide the plan administrator with such a declaration which states and gives proof that the domestic partner has had the same permanent residence as you for a minimum**

**of 6 consecutive** months prior to the date insurance would become effective for that domestic partner. You must not have signed a declaration of domestic partnership with anyone else within the last 6 months of signing the latest declaration of domestic partnership. Also, the domestic partner must be at least 18 years of age, competent to contract, not related by blood closer than would bar marriage, the sole named domestic partner, not married to anyone else and the declaration of domestic partnership must be approved and recorded by the plan administrator. You may not cover your domestic partner as a dependent if your domestic partner is enrolled for coverage as an employee.

- Your unmarried children from live birth but less than age 19. Stillborn children are not eligible for coverage.

- Your unmarried dependent children age 19 or over but under age 25 also are eligible if they are full-time students at an accredited school.

- Your unmarried dependent children who are permanently and continuously incapable of self sustaining support by reason of mental retardation or physical handicap existing prior to the child's attainment of age 25.

(UF #8, supra; Doc. #22-1, at 75, 76) (emphasis added) Unum argues that the spousal enlargement language applies to any portion of the Plan that uses the term "Spouse".

Utilizing the Finley factors, this argument is problematic for a number of reasons. First it ignores the context within which that language appears. The spousal enlargement language appears in a section wherein an employee's dependents may obtain life and/or accidental death and dismemberment coverage. Furthermore, the language is not set off in any manner which would indicate that it is meant to apply to all provisions of the Plan and not just as part of a list of dependents eligible to obtain life and/or accidental death and dismemberment coverage. Additionally, the spousal enlargement language is found under both headings ("What Dependents are Eligible for Life Coverage" and "What Dependents are Eligible for Accidental Death and Dismemberment Coverage"). (See UF #8, supra) Had the spousal enlargement language been intended to apply to the entire Plan, there would be no reason to add the language defining spouse

13

as including a domestic partner in both sections; it could have been set out once with no need to set it forth a second time. Further, the Administrator's determination ignores the fact that the Plan includes a Glossary which defines certain terms. Had Unum meant for the spousal enlargement language to apply to all aspects of the Plan, then it could have done so by including a definition of spouse or domestic partner in the Glossary. Therefore, to read the spousal enlargement language in these two sections as applicable to the entire Plan is inconsistent with the general formatting of the Plan.

Even if this Court were to accept Unum's interpretation that the spousal enlargement language applies to the entire Plan, this Court cannot ignore the fact that directly following the spousal enlargement language the Plan defines who is a domestic partner. There are multiple requirements for establishing who is a domestic partner. These requirements include the following:

1. The employee[3] must provide the administrator with a declaration of domestic partnership, and
2. The employee must provide "proof that the domestic partner has had the same permanent residence as [the employee] for a minimum of 6 consecutive months prior to the date insurance would become effective for that domestic partner[,]" and
3. The employee "must not have signed a declaration of domestic partnership with anyone else within the last 6 months of signing the latest declaration of domestic partnership[,]" and
4. The domestic partner "must be at least 18 years of age[,]" and
5. The domestic partner must be "competent to contract," and
6. The domestic partner must "not be related by blood closer than would bar marriage," and
7. The domestic partner must be the "sole named domestic partner," and
8. The domestic partner must not be "married to anyone else[,]" and

---

[3] The language of the Plan states "You must execute and provide the plan administrator with such a declaration which . . . ." The Plan defines "You" as "an employee or retiree who is eligible for Unum coverage." (Doc. #22-1, at 109)

9. The "declaration of domestic partnership must be approved and recorded by the plan administrator[,]" and
10. The employee "may not cover [the] domestic partner as a dependent if [the] domestic partner is enrolled for coverage as an employee.

(UF #8, supra; Doc. #22-1, at 75) The Plan clearly indicates that the employee must be the one to designate a domestic partner. There is no evidence that Terry Engle filed a declaration of domestic partner with the Plan Administrator prior to his death. Thus, in paying the benefits to Terry Engle's purported domestic partner Unum ignored this key provision of the definition. Unum's interpretation would render the domestic partner definition contained in the Plan meaningless and is in contravention of the clear language of the Plan.

On appeal from the initial claim decision, Unum stated that the language defining a domestic partner "pertain only to a dependent's eligibility [for] group Life insurance coverage. The definition and requirements do not pertain to the payments of proceeds." (UF #41, supra; Doc. #35-1, at 69; see also Doc. #35-1, at 20, Unum's original determination, stating the same) Unum is potentially drawing such inference because the language is found under the headings entitled "What Dependents are Eligible for Life Insurance" and "What Dependents are Eligible for Accidental Death and Dismemberment Coverage".[4] (Doc. #22-1, at 75) Of course the spousal enlargement language also appears under that heading. Therefore, if the domestic partnership

---

[4] In argument before this Court, Unum makes the same argument, but points to other language in the domestic partner definition that it argues limits the provision to those "seeking eligibility for insurance coverage, not payment of insurance benefits." (Doc. #42, at 22) The language in the domestic partnership definition that Unum points to is a line that states that the domestic partner must have the same residence as the employee "for a minimum of 6 consecutive months prior to the date insurance would become effective for that domestic partner." (Doc. #22-1, at 75, 76) However, for the very reasons already discussed, an argument that the definition of domestic partner applies only to those applying for life insurance or accidental death and dismemberment insurance provides no basis for Unum to rewrite the Plan by creating its own definition of who is a domestic partner for purposes of payment of insurance proceeds.

15

definition provision was limited to who was eligible for coverage, then the spousal enlargement language must also be so limited. As there is no other provision in the Plan defining the term "spouse" to include domestic partner, Unum's argument undercuts its claim that payment to Ms. Jones is authorized by the Plan.

Thus, the second and fifth Finley factors weigh in favor of finding that the Administrator's interpretation of the Plan was unreasonable. Unum's interpretation of the Plan takes the language out of context and renders language of the Plan meaningless and/or inconsistent with the surrounding language and format of the Plan. Furthermore, Unum's interpretation of the Plan, if taken as true, violates the clear language of the Plan which dictates that the spousal enlargement language must be read in conjunction with the domestic partnership definition. Where, as here, an administrator's determination conflicts with the clear and unambiguous language of the plan, there "is a very strong indication of arbitrary and capricious behavior." Lickteig v. Bus. Men's Assur. Co. of Am., 61 F.3d 579, 585 (8th Cir. 1995) (quoting Dennard v. Richards Group, Inc., 681 F.2d 306, 314 (5th Cir.1982)).

The first and third Finley factors, relating to the goals of the Plan and whether the interpretation conflicts with the requirements of ERISA, also weigh in favor of a finding of unreasonableness. The language of the Plan indicates a strong goal of providing clarity as to who is eligible for payment of benefits. The Benefits at a Glance indicates that the life insurance and the accidental death and dismemberment insurance plans "provide[] financial protection for your beneficiary(ies) by paying a benefit in the event of your death . . . ." (Doc. #22-1, at 45, 52) (emphasis added) The Plan strongly encourages employees to designate a beneficiary at the time of enrollment. (UF #9, supra; Doc. #22-1, at 58, 62) In the event that an employee does not designate a beneficiary, the Plan will either pay the benefits to the estate or to certain family

members. (UF #9, supra; Doc. #22-1, at 58-59, 62) Thus, the Plan seeks to provide clarity with regard to the award of benefits. Furthermore, the language defining domestic partner reinforces the Plan's goal to provide benefits to those individuals that the employee designates. The domestic partner language indicates that only the employee can designate a domestic partner. Thus the goals of the Plan are to provide clear guidance as to who is eligible for benefits.

Allowing an individual to declare themselves a domestic partner of a covered employee after the death of an employee is not consistent with creating clarity in the award of benefits. As discussed earlier, Unum's interpretation of the Plan, which posits that the domestic partner definition only pertains to a dependent's eligibility for coverage and not to those seeking payment of proceeds, would mean there is no set of requirements for someone seeking payment of proceeds as a domestic partner. Therefore, whether the employee intended to declare someone as a domestic partner would not be a requirement under Unum's interpretation. Nor would the requirement that the employee and the domestic partner must share a residence be part of the analysis. Therefore, there is no explanation, under Unum's interpretation, as to what criteria would be used in considering a claim filed by a "domestic partner".

By arguing that an individual seeking benefits may deem themselves to be a domestic partner of a covered employee, Unum potentially opens themselves up to a host of individuals who claim to be domestic partners with no meaningful way to assess such a claim. One can understand why an employee would need to designate a domestic partner. Where an employee does not name a beneficiary then the Plan allows for payment to an estate or to certain family members. Those family members are spouse, child or children, mother or father, or sisters or brothers. The specified family members are consistent with the general rules of descent. See e.g. 474.010 RSMo. In all of these instances the relationship is easily verifiable through governmental sources. That is not

the case for a domestic partner. Without some sort of indication from the employee that they wish to designate a domestic partner as a beneficiary there is no verifiable way of assessing such relationship.

ERISA requires that the plan administrator, the fiduciary, "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participant and their beneficiaries; . . . ." 29 U.S.C.A. § 1104(a)(1). ERISA defines an employee as a participant and beneficiaries as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(7) & (8). ERISA clearly recognizes that the intentions of the participant are to be honored when stated. When no beneficiaries are stated then the terms of the plan govern. As discussed earlier the Administrator's determination in the instant case does not follow the terms of the Plan as interpreted by Unum. Therefore, the Plan Administrator's determination is not in accordance with ERISA's dictates.

Finally, with regard to the fourth factor, there is no evidence that Unum regularly pays life insurance benefits and accidental death and dismemberment insurance benefits to domestic partners. Unum attempts to show that it regularly awards benefits to a domestic partner by pointing to the Domestic Partner Affidavit, but that attempt misses the mark.

While Unum's Domestic Partner Affidavit seems to suggest that Unum provides life insurance benefits to domestic partners of deceased employees, it also suggests that the domestic partnership definition set forth in the Plan applies in such circumstances. Under the instructions the form states "If you are the Domestic Partner of the deceased and are claiming Life Insurance benefits, please sign and date this form, and have it notarized." (Doc. #22-1, at 203) Therefore, the form is in line with Unum's assertion that the spousal enlargement language applies throughout

the Policy. However, Unum did not present any evidence to suggest that it regularly utilizes the Domestic Partner Affidavit to pay benefits to individuals who have not been designated as a domestic partner by the covered employee prior to the employee's death. The Domestic Partner Affidavit merely shows that an individual is being asked to attest to matters which mirror the language defining domestic partner. This Court cannot infer that the form was regularly used to allow an individual to declare themselves to be a domestic partner of a deceased covered employee where no declaration from the employee was submitted.

Therefore, this Court finds that the Plan Administrator's determination was unreasonable. Unum's interpretation is not in line with the general formatting of the Plan. Furthermore, Unum's argument that spouse includes a domestic partner is not consistent with their own interpretation of the Plan. Therefore, Defendant's motion for summary judgment is denied. Plaintiff's cross-motion for summary judgment is granted. Although plaintiff requests that judgment in the amount of $266,000 be entered in her favor, this Court finds that the matter should be remanded to the Plan Administrator for a determination of the proper recipient in accordance with this decision. See King, 414 F.3d at 1005-06 (stating that "[i]t is not the court's function ab initio to apply the correct standard to [the participant's] claim. That function, under the Plan, is reserved to the Plan administrator." (internal quotation omitted))

Based on the foregoing, it is

**ORDERED** that the defendants' Motion for Summary Judgment (doc. #34) is **DENIED**. It is further,

**ORDERED** that the plaintiff's Motion for Summary Judgment (doc. #37) is **GRANTED**. It is further,

**ORDERED** that the matter is remanded to the Plan Administrator for a reevaluation of the proper recipient of the life insurance and accidental death and dismemberment insurance benefits, in accordance with this Order.

>                          */s/ Sarah W. Hays*
>                          SARAH W. HAYS
>                 UNITED STATES MAGISTRATE JUDGE